IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


VINCENTE A. MENCHACA,           §
                                §
              Plaintiff,         §
                                §
v.                              §      CIVIL ACTION NO. H-07-0825
                                §
CNA GROUP LIFE ASSURANCE CO.    §
and BAKER HUGHES, INC.,         §
                                §
              Defendants.        §


**MEMORANDUM OPINION AND ORDER**


        Plaintiff, Vincente A. Menchaca, brings this action against

defendants, CNA Group Life Assurance Company and Baker Hughes,

Inc., for the violation of

> federal statutes . . . by refusing to continue insurance
> and/or Long Term Disability payments when such payments
> were, in fact, properly due to Plaintiff.  Such federal
> statutes include, but are not limited to provisions for
> the reasonable and fair review of policy benefits and
> prompt payment of claims under such policies, as mandated
> by the Employees Retirement Income Security Act (ERISA).[1]

Plaintiff seeks "to recover unpaid benefits under the policy, to

enforce his rights under the policy, to be compensated for all

consequential injuries suffered by him, and to obtain all other

relief to which he is entitled under law."[2]  Pending before the

court is Defendants' Motion for Summary Judgment (Docket Entry

---

        [1]Plaintiff's Second Amended Complaint, Docket Entry No. 26,
p. 4 ¶ 11.

        [2]Id. at 3 ¶ 10.

No. 28).  For the reasons explained below, defendants' motion will be granted.

## I.  <u>Standard of Review</u>

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2511 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case."  <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>) (quoting <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548, 2553-54 (1986)).  If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.  <u>Id.</u> (citing <u>Celotex</u>, 106 S.Ct. at 2553-2554).  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  <u>Reeves v. Sanderson Plumbing Products Inc.</u>, 120 S.Ct. 2097, 2110 (2000).  Factual controversies are to be resolved in favor of the nonmovant, "but

-2-

only when . . . both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

## II.  **Undisputed Facts**

Plaintiff worked for Baker Hughes as a machinist from the 1970s until November of 1993 when he developed pain in his hands and wrists.  Plaintiff filed a claim for long-term disability benefits under the Baker Hughes, Inc. Long Term Disability Plan (Plan), which was his employer's self-insured plan.[3]  Plaintiff alleges that "[a]t various points in time, [he] was denied, then given, then again denied, then again given, and then finally denied long-term disability payments by Defendants."[4]  In support of their motion for summary judgment, the defendants have submitted the Administrative Record on which CNA based its final decision to deny plaintiff's claim for long-term benefits.[5]  Plaintiff does not dispute that the Administrative Record submitted by the defendants is the record upon which CNA based its decision to deny his claim.

Undisputed facts contained in the Administrative Record show that plaintiff's claim for disability benefits was approved by the Plan's administrator, ReliaStar (subsequently known as ING Employee

---

[3]<u>Id.</u> at 2-3 ¶ 8.

[4]<u>Id.</u> at 3 ¶ 9.

[5]Administrative Record (AR), Exhibit 1A attached to Defendants' Brief in Support of Their Motion for Summary Judgment, Docket Entry No. 29.

Benefits Disability Management Services (ING)),[6] but that on or about October 17, 2001, ReliaStar terminated plaintiff's benefits due to his failure to provide medical updates required to substantiate his continued entitlement to benefits.[7] Nevertheless, on June 21, 2002, Baker Hughes sent plaintiff a letter signed by Michele Gest, Manager of Benefits, stating that

> [b]eginning July 1, 2002, we're changing how we manage and administer our disability plans, and will be introducing CNA Insurance as our new disability plan administrator.
>
> . . .
>
> While this does not change your LTD benefits in any way, we wanted to let you know what to expect and what you need to do to ensure a smooth transition:
>
> . . .
>
> • You will receive LTD benefit payment due through July 2002 from ING Employee Benefits (formerly ReliaStar). Beginning in August, you will receive LTD benefit payments from CNA. . .

---

[6]See June 21, 2002, letter from Baker Hughes, stating that ING Employee Benefits was formerly ReliaStar, included in the AR at 535. Neither the plaintiff's initial application for disability-related benefits, nor the term and/or conditions under which benefits were granted are in the AR. However, in the appeal that plaintiff filed with CNA for the claim at issue in this action, plaintiff states that in the year 2000 he filed a claim with Baker Hughes retroactively seeking long-term disability benefits after he received an adverse ruling in a previous lawsuit against Baker Hughes, i.e., Vincente A. Menchaca v. Baker Hughes Oilfield Operations, Inc., Civil Action No. H-96-1392.

[7]See June 4, 2002, letter from plaintiff to Sherry Olson, AR at 541-42 (complaining about ING's decision to stop paying benefits). See also November 26, 2002, letter to plaintiff from James Wilhite, Baker Hughes Director of Compensation Benefits, AR at 457 (stating that ING had discontinued plaintiff's benefits as of October 17, 2001).

-4-

CNA will be addressing any issues resulting from this transition on a case-by-case basis. . .[8]

On September 3, 2002, plaintiff wrote to CNA complaining that his efforts to obtain information regarding his claim for disability benefits had been unsuccessful.[9]  On September 15, 2002, CNA responded that his questions and concerns should be directed to Baker Hughes' legal department.[10]

On November 26, 2002, Baker Hughes' Director for Compensation and Benefits, James Wilhite, notified plaintiff that Baker Hughes would ask CNA to reopen and evaluate his claim for ongoing disability benefits, that in "good faith" Baker Hughes would direct CNA to issue a lump-sum payment for benefits for the period November 1, 2001, through December 31, 2002, but warned plaintiff that such payment did "not constitute a determination that you, in fact, had a qualifying disabling condition during the period from November 1, 2001 through December 1, 2002 that entitled you to payment."[11]

On January 21, 2003, CNA received the plaintiff's file for review.[12]  On January 30, 2003, CNA conducted a Claimant Interview

---

[8]AR at 535.

[9]AR at 533-34.

[10]AR at 530.  See also Defendants' Brief in Support of Their Motion for Summary Judgment, Docket Entry No. 29, p. 5 ¶ 12.

[11]AR at 457.  See also Defendants' Brief in Support of Their Motion for Summary Judgment, Docket Entry No. 29, pp. 5-6 ¶ 13.

[12]AR at 212 and 319.

with the plaintiff during which plaintiff stated that he was a high school graduate and that he worked for an attorney three days per week for eight hours each day running errands and helping with translations. Plaintiff stated that he was not receiving treatment for his condition because the only medical care available to him was that provided by the Veterans' Administration (VA), and that his condition prevented him from driving. Plaintiff also stated that the VA had sent him to various rehabilitation programs but that none were successful because increased activity caused him to suffer pain and swelling.[13]

On February 4 and 6, 2003, CNA obtained video surveillance of plaintiff walking, entering and exiting vehicles, and driving.[14]

On February 6, 2003, CNA calculated the amount of benefits due for the period November 2, 2001, through December 2, 2002, as $16,082.35. CNA's calculation took into account plaintiff's earnings during that period and policy provisions that called for reducing benefits by fifty percent of earnings.[15]

On February 17, 2003, in response to CNA's request, plaintiff provided CNA a medical release authorization but complained, "I

---

[13]AR at 510-11. See also Defendants' Brief in Support of Their Motion for Summary Judgment, Docket Entry No. 29, p. 6 ¶ 16.

[14]AR at 324-334 and 480-487. See also Defendants' Brief in Support of Their Motion for Summary Judgment, Docket Entry No. 29, p. 7 ¶ 18.

[15]AR at 508. See also Defendants' Brief in Support of Their Motion for Summary Judgment, Docket Entry No. 29, pp. 6-7 ¶ 17.

feel that your request for yet another Medical Release Authorization is only an excuse to delay and or deny my disability benefits."[16] From March to July of 2003 plaintiff and CNA exchanged in telephone calls and correspondence in which CNA sought updated medical information from plaintiff in support of his disability claim, and plaintiff disputed his need to provide updated medical information on grounds that CNA's predecessor, ING, had already approved his claim such that he was entitled to receive benefits until he reached the age of 65.[17]

On July 23, 2003, CNA sent plaintiff a letter notifying him that benefits would not be approved beyond December of 2002.  In pertinent part the letter stated:

> According to the information provided, you suffered from Bilateral Tendonitis of the Wrists, Spondylosis Cervical Spine and Thoracic Outlet Syndrome, which you indicate, prohibits you from performing gainful employment.  Your last day worked was 7/21/94 and you were claiming disability as of 7/22/94.
>
> As you are aware, CNA Insurance Company acquired the Baker Hughes Inc. Disability Plan from ING in July of 2002.  Upon receipt of your Long Term Disability Claim, ING had approved your disability benefits through 10/17/01.  You were informed to submit additional supporting information to substantiate your continued entitlement to benefits.  However no subsequent supporting information was provided thus causing the termination of further benefits.

---

[16]AR at 490.  See also Defendants' Brief in Support of Their Motion for Summary Judgment, Docket Entry No. 29, p. 7 ¶ 19.

[17]Defendants' Brief in Support of Their Motion for Summary Judgment, Docket Entry No. 29, pp. 9-13 ¶¶ 26-45.

On 3/11/03, CNA Insurance was instructed by Baker Hughes Inc. to issue additional long-term benefits through 12/1/02. . .

Your claim was reviewed which contained records of previous workers compensation evaluations. . .

On 5/7/03, an internal physician reviewed the medical records contained in your file. The most recent medical information, limited to the VA clinic notes of 2/10/03 and 4/15/03 did not provide evidence of findings, which supported any clear restrictions on work activities. . .

On 5/15/03 and 5/16/03, you were referred to Hope Rehab facility to undergo a functional capacity evaluation. The report indicates that you demonstrated good balance on narrow surfaces, good tolerance for sitting, walking and standing. You also demonstrated fairly good tolerance for squatting and a sustained crouch along with fairly good tolerance for kneeling, crawling, and rotating while seated and standing. There were also reports of fairly good tolerance for lifting lighter weighted objects and repetitive activities with your hands handling lightweight objects. However, there were significant deficits that included poor tolerance demonstrated for climbing a ladder repetitively. There were also poor tolerance noted for standing in a forward flexed position and working with arms elevated greater than 2 minutes. Therefore poor tolerance was demonstrated for lifting or carrying over 20 pounds.

On 6/6/03, you were referred for an Independent Medical Evaluation rendered by Dr. Frank Barnes. Upon conclusion of the examination, Dr. Barnes states, "based on today's physical examination, review of medical records, as well as the history given to me by Mr. Menchaca, it is my professional medical opinion that Mr. Menchaca's current level of functionality is within the light category." Dr. Barnes also stated, "Based on the objective physical findings from today's clinical examination, it is my professional opinion that Mr. Menchaca can perform work with lifting 20 pounds occasionally and 10 pounds frequently. Mr. Menchaca should be restricted to lifting no more than 20 pounds at any particular time." Regarding your restrictions and limitations, Dr. Barnes notes, "It is my professional medical opinion that, based on the objective physical findings of today's examination, Mr. Menchaca has no limitations and or restrictions regarding sitting, standing or walking.

-8-

Based on the objective physical findings of today's examination, Mr. Menchaca should be able to perform these activities without any difficulty."

On 7/21/03, CNA performed a vocational assessment of your claim and your ability to return to the workforce. Based on the information in your file, the vocational case manager identified that an individual with your current level of education, work history and geographical location would be able to perform alternative gainful employment. The following alternative occupations have been provided to you: **Information Receptionist, Surveillance Camera Monitor, Control Access Guard and Gate Guard.**

The Definition of Disability in the policy offered by your employer is defined as:

- The inability to perform the essential duties of your own occupation for the first 12 months of Disability.

- Thereafter the inability to perform the essential duties or employment for which he/she is qualified, or may reasonably become qualified, based on training, education or experience.[18]

In December of 2003 CNA provided plaintiff a copy of his entire claim file,[19] and in January of 2004 plaintiff appealed CNA's July 23, 2003, denial of benefits beyond December 1, 2002. In support of his appeal, plaintiff submitted (1) a narrative statement of the reasons why he considered himself to be eligible for long-term disability benefits under the Plan and (2) copies of documentation that he had submitted in support of a similar appeal

---

[18]AR at 386-87.

[19]AR at 124. See also Defendants' Brief in Support of Their Motion for Summary Judgment, Docket Entry No. 29, p. 15 ¶ 55.

that he had filed with ING in February of 2001.[20]  In pertinent part
plaintiff's narrative states:

> The facts show that I worked for Baker Hughes for
> eighteen years before being diagnosed with a work-related
> injury on January 18, 1994.  I was placed on light duty
> in the tool-room and was assigned a number of tasks
> despite my condition. . . I remain[ed] in the tool room
> until July 12, 1994. . .
>
> Dr. David Hildreth released me on September 12, 1994 with
> limitations that included light duty.  BH refuses to
> admit restrictions.  TWCC requested second opinion from
> Dr. Anchondo.  BH again refused to admit the light duty
> release.  BH then placed me on short-term disability on
> October 1994. . .
>
> On January 18, 1995, Dr. Anchondo submitted a claim for
> LTD benefits as per the request of BH.  Dr. Anchondo
> submitted proof of permanent and total disability
> associated with a diagnosis of chronic hand/wrist pain,
> wrist involvement, and prognosis as poor. . .
>
> BH terminated my employment under the pretext I was being
> laid off because there was no work available after being
> released to full duty.
>
> TWCC granted me disability benefits on July 1996.  Its
> decision was based on medical reports that proved wrist
> and hand involvement prevented me from "*keeping and
> retaining*" employment and that I had been disabled from
> September 1994 thru date of hearing.  Furthermore, TWCC
> stated, "*that pain can be considered to the extent it
> prevents the performance of work*."
>
> Furthermore, on August 1999, BH successfully defended
> against my claim for retaliatory discharge by claiming I
> was "*substantially limited in the major life activity of
> work because of my physical impairment, the constant
> swelling of my hands and wrist and chronic pain*."  It
> added that may condition "*prevented me from performing
> other manual jobs requiring the use of hands*."  It
> supported its claim with medical testimony from a number

---

[20]AR at 217-97.  See also Defendants' Brief in Support of Their
Motion for Summary Judgment, Docket Entry No. 29, p. 15 ¶ 56.

of doctors who concurred with wrist and hand involvement,
chronic pain and use of hands for all manual labor.  In
addition BH presented testimony from witnesses who
testified I was "*physically and/or mentally unable to
perform my duties or any other duties at BH.*" . . .

In August of 2000 on the basis of newly discovered
evidence, I requested a reinstatement of benefits
retroactive to date of termination.  I made two appeals
and full investigation by ING before it granted benefits
on October 2001. . . The record will show BH was aware
benefits had been granted. . .

. . .

There is no doubt I meet the definition for
"Disability/Total Disability" under the terms of the
Plan.  Dr. Anchondo established "Total and Permanent"
disability as early as 1/18/95 upon request by Baker
Hughes.  He mentioned the wrist/hand involvement and
chronic pain.  Disability was also established by TWCC
[i]n its decision and order in 7/03/96.  It mentioned my
constant swelling and pain.  CNA has enough medical data
in files, and BH admitted I [was] discharged because of
my disability.

. . . BH determined I could not return to previous
employment because my physical and mental impairments
limited my ability to perform prior duties or any other
duties.  I was excluded from manual labor.  I am under
regular care at the VA receiving treatment and counseling
for pain to my hands and wrist. The record, if properly
reviewed as a whole, is full of medical proof I am not
engaged in gainful employment, my condition has not
improved, or that I have received substantial vocational
rehabilitation to return to work. . . My ankle problems,
swelling and pain, have greatly limited my activity of
walking, thus reducing working hours. My work is limited
to the day[s] I can be available to work and doing
errands.

. . .

In addition I am 58 yrs. old with other medical problems
. . .

I am qualified by training, education and experience, as
a machinist, welder, and carpenter all jobs require the

use of hands.  Skills are not transferable because all require manual labor. . .

The vocational assessment made by Ms. Julie Byrd offers no proof I am qualified to perform the alternative occupations she outlines in her report, only that they exist.  I remain physically and mentally unable to do my previous work.  In August 30, 2001, ING conducted a labor market survey that outlined my "limitations and restrictions."  Jobs were found to be unrealistic and that I could not substantially do all the activities required.  In addition ING stated jobs were *uncertain, unpredictable and not gainful.*  Ms. Byrd does not mention reading the report of ING.

. . .

I dispute the IME Dr. Frank Barnes . . . His conclusion as to functionality is light duty, agreeing with my treating doctors. . . .

. . .

I am enclosing a copy of my appeal dated February 5, 2001 I filed with ING.

. . .

I don't believe CNA can force me to seek any kind of employment, above or below my qualifications, just to justify stopping of benefits.  I paid for eighteen years for protection in case of injury.  I felt safe knowing [I] would have economic security and peace of mind, I was wrong.[21]

On March 9, 2004, CNA denied plaintiff's appeal.[22]  Plaintiff was referred to "CNA's letter dated July 23, 2003, for the policy provisions on which CNA's benefit determination was based and the

---

[21]AR at 217-22.

[22]See March 9, 2004, letter to plaintiff from Joye M. Kelly, Appeals Committee Member, AR at 151-52.

-12-

medical information that was received and reviewed."[23]    CNA
explained

> [w]e acknowledge that you have a medical condition(s)
> that caused a reduction in your functional ability and
> that precluded you from performing your regular
> occupation as a Machine Operator for Baker Hughes that
> required a greater level of function.   Benefits were
> appropriately provided under the terms of the policy for
> 12 months that ended on 1/18/96.  The next issue at hand
> is your eligibility for continued benefits under the
> terms of the policy beyond 12 months for which you would
> have to be unable to perform *any* work activity.
>
> . . .
>
> The recent evaluations that were conducted that included
> an Independent Medical Examination and a Functional
> Capacity Evaluation document that you are capable of at
> least sedentary-type to light work activity.  The
> evidence presented was also reviewed by a Medical
> Consultant that opined there were no findings on
> physical/clinical examination that would support any
> clear restrictions on work activity.
>
> . . .
>
> A Vocational Case Manager of whose opinion and expertise
> we further relied on conducted a vocational assessment.
> It was the opinion of the Vocational Case Manager that
> based on the medical evidence presented, your education,
> training, work experience, that you are capable of
> alternative employment.  Please note that the occupations
> identified by the Vocational Case Manager are only
> *examples* of alternative employment and should not be
> considered all inclusive of every occupation that you
> have the functional ability to perform.[24]

### III.   Analysis

Defendants argue that they are entitled to summary judgment
because CNA's decision to discontinue plaintiff's long-term

---

[23]AR at 151.

[24]AR at 151-52.

disability benefits was not an abuse of discretion.[25]  Defendants also argue that they are entitled to summary judgment on any claims that plaintiff may be attempting to assert against them based on state law because such claims are preempted by ERISA, and that they are entitled to recover the reasonable and necessary attorney's fees and costs incurred defending this action under 29 U.S.C. § 1132(g).[26]  Plaintiff argues that defendants are not entitled to summary judgment because defendants abused their discretion by (1) failing to conclusively establish the applicable standard of review, (2) arbitrarily and capriciously reversing conclusive findings made by the prior Plan Administrator, and (3) denying his claim for long-term disability benefits absent any evidence that he could have been employed full-time in any occupation.

## A.   Plaintiff's ERISA Claim

Plaintiff's claim for denial/discontinuance of long-term disability insurance benefits due under an employer-provided benefit plan is actionable under § 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), which in pertinent part provides:

---

[25]Defendants' Motion for Summary Judgment, Docket Entry No. 28, p. 3 ¶ 6.  See also Defendants' Brief in Support of Their Motion for Summary Judgment, Docket Entry No. 29, pp. 3-4 ¶ 7; Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 39, p. 2 ¶ 2.

[26]See Defendants' Brief in Support of Their Motion for Summary Judgment, Docket Entry No. 29, pp. 16-17 ¶¶ 60-62.

A civil action may be brought –

    (1) by a participant or beneficiary–

  . . .

        (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

1.   <u>Standard of Review</u>

"'[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" <u>Vega v. National Life Ins. Services, Inc.</u>, 188 F.3d 287, 295 (5th Cir. 1999) (en banc) (quoting <u>Firestone Tire & Rubber Co. v. Bruch</u>, 109 S.Ct. 948, 956-957 (1989)).  If the language of the plan grants such discretion, a court will reverse an administrator's decision only for abuse of discretion.  <u>Meditrust Financial Services Corp. v. Sterling Chemicals, Inc.</u>, 168 F.3d 211, 213 (5th Cir. 1999).

    (a)  Abuse of Discretion is Appropriate Standard

Citing § 9.7 of the Plan, defendants assert that CNA possessed discretionary authority both to construe the terms of the Plan and to determine eligibility for benefits.[27]  Although plaintiff does

---

[27]See Defendants' Brief in Support of Their Motion for Summary Judgment, Docket Entry No. 29, p. 18 ¶ 63 (citing § 9.7 as stating "<u>Discretion to Interpret Plan</u>.  The Plan Administrator shall have
(continued...)

not dispute the scope of CNA's discretionary authority, without citing any authority he argues that the de novo standard of review "applies even if the plan administrator has discretion, under circumstances when there is a potential conflict of interest in that plan administrator's decision making."[28]  Plaintiff argues that "[b]y failing to even mention the possibility of a conflict of interest and/or any other widely accepted circumstances justifying a de novo review by this Court, Defendants have failed to meet their summary judgment burden."[29]  Plaintiff is incorrect.

In the Fifth Circuit the abuse of discretion standard of review is somewhat less deferential where the administrator is operating under a conflict of interest because such administrators have "a financial incentive to deny the claim and often can find a reason to do so." Vega, 188 F.3d at 296.  Therefore, in this circuit, the existence of a conflict of interest is only a factor effecting the deference given to the administrator's decision; a

_____

[27](...continued)
absolute discretion to construe and interpret any and all provisions of the Plan including, but not limited to, the discretion to resolve ambiguities, inconsistencies, or omissions conclusively; provided, however, that all such discretionary interpretations and decisions shall be applied in a uniform and nondiscriminatory manner to all Participants similarly situated. The decisions of the Plan Administrator upon all matters within the scope of its authority shall be binding and conclusive upon all persons.").  See also AR 100-01.

[28]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 36, p. 2 ¶ 2.

[29]Id. at 2 ¶ 4.

-16-

conflict of interest does not alter the abuse of discretion standard of review. Id. at 297 ("The existence of a conflict is a factor to be considered in determining whether the administrator abused his discretion in denying a claim."). See also Kergosien v. Ocean Energy, Inc., 390 F.3d 346, 356 (5th Cir. 2004) (recognizing that under the Fifth Circuit's "sliding scale" standard "the deference due the [administrator's] decision may be reduced in proportion to the conflict [of interest]."). In such situations a plaintiff must present evidence showing the existence and extent of conflict. See MacLachlan v. ExxonMobil Corp., 350 F.3d 472, 479 n.8 (5th Cir. 2003), cert. denied, 124 S.Ct. 2413 (2004) ("The mere fact that benefit claims are decided by a paid . . . administrator who works for the defendant corporation does not, without more, suffice to create an inherent conflict of interest."). Generally, this evidence will be found outside the administrative record. See Kergosien, 390 F.3d at 356 ("There is no practical way for the extent of the administrator's conflict of interest to be determined without . . . going beyond the record of the administrator.").

Here, plaintiff mentions the possibility that a conflict could have existed, but fails to cite evidence from which the court could conclude either that a conflict did exist and, if so, the extent to which such conflict affected CNA's decision to deny his claim. Because plaintiff has failed to proffer any evidence reflecting either the existence of a conflict of interest or its extent, the court concludes that the abuse of discretion standard applies

-17-

without need to reduce the deference given to the administrator's decision.

        (b)  How Courts Apply the Abuse of Discretion Standard

When applying the abuse of discretion standard, the court's task is to determine whether the administrator acted arbitrarily or capriciously. See Meditrust, 168 F.3d at 214 (citing Wildbur v. ARCO Chemical Co., 974 F.2d 631, 635 (5th Cir. 1992) ("We agree with the Wildbur court that there is only a 'semantic, not a substantive, difference' between the arbitrary and capricious and the abuse of discretion standards in the ERISA benefits review context."). See also Sweatman v. Commercial Union Ins. Co., 39 F.3d 594, 601 (5th Cir. 1994) ("In applying the abuse of discretion standard, we analyze whether the plan administrator acted arbitrarily or capriciously."). "A decision is arbitrary when 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" Id. at 215 (quoting Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan, 97 F.3d 822, 828 (5th Cir. 1996)). An administrator's decision is not arbitrary and capricious if it is supported by substantial evidence. Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 273 (5th Cir. 2004), cert. denied, 125 S.Ct. 2941 (2005). "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Deters v. Secretary of Health, Educ., and Welfare, 789 F.2d 1181,

1185 (5th Cir. 1986)).   An "administrator's decision to deny benefits must be 'based on evidence, even if disputable, that clearly supports the basis for its denial.'"   Lain v. UNUM Life Ins. Co. of America, 279 F.3d 337, 342 (5th Cir. 2002) (quoting Vega, 188 F.3d at 299).

2.   Application of the Law to the Facts

Defendants argue that CNA's decision to deny plaintiff's claim for long-term disability benefits was not arbitrary and capricious because it was supported by substantial evidence that the plaintiff was not disabled under the "any occupation" provisions of the Plan. Plaintiff argues that "[i]t was arbitrary and capricious for Defendants to reverse the conclusive findings made by prior plan administrators,"[30] and that there is "no evidence that Plaintiff could have been employed full-time in 'any occupation.'"[31]

(a)   Decision of Prior Administrator

Plaintiff argues that "[i]t was arbitrary and capricious for Defendants to reverse the conclusive findings made by prior plan administrators,"[32] because the Administrative Record

> indicates that Plaintiff was actually granted Long-Term
> Disability benefits after a full review of his
> circumstances . . . [and] there is no evidence within the
> summary judgment record to justify Defendants' re-opening
> of Plaintiff's case and terminat[ing] his benefits, when

---

[30]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 36, p. 3(A.).

[31]Id. at 3(B.).

[32]Id. at 3(A.).

all indications were that his condition was never better than stabilized, but <u>actually got worse</u>.[33]

Missing from plaintiff's submission to the court is (1) any evidence that he was receiving long-term disability benefits when CNA assumed the role of Plan Administrator from ING; or (2) that once a Plan Administrator determined that plaintiff was entitled to benefits, the Plan Administrator was not entitled to terminate those benefits if plaintiff was subsequently found not to be disabled under the terms of the Plan.

### (1)   Did CNA Reverse Decision of ING?

Plaintiff alleges in his Second Amended Complaint that

> [t]he policy was originally through an insurance company called "ING" and/or "ReliaStar". ING was eventually replaced by CNA. At various points in time, Mr. Menchaca was denied, then given, then again denied, then again given, and then finally denied long-term disability payments by Defendants. All decisions to deny benefits to Mr. Menchaca were inconsistent with the medical facts, and inconsistent with statements made by Baker Hughes in and out of court proceedings.[34]

Undisputed evidence contained in the Administrative Record establishes that CNA replaced ING as the Plan Administrator on July 1, 2002,[35] and that when CNA took over from ING, plaintiff's benefits had already been discontinued as of October 17, 2001, <u>i.e.</u>, plaintiff's benefits had been discontinued while ING was

---

[33]<u>Id.</u> at 3 ¶ 5.

[34]Plaintiff's Second Amended Complaint, Docket Entry No. 26, p. 3 ¶ 9.

[35]See June 21, 2002, letter from Michele Gest to plaintiff, AR at 535.

still the Plan Administrator.[36]  Additional evidence establishes

that CNA did not assume payment of disability benefits to

plaintiff,[37] and that CNA initiated an analysis of plaintiff's

eligibility for disability benefits in January of 2003 at Baker

Hughes' request.[38]  The undisputed evidence also establishes that

despite having no record that plaintiff was entitled to benefits

for the period from November 1, 2001, through December 1, 2002, in

an act of good faith Baker Hughes agreed to pay him benefits for

that period, but explained to plaintiff that no further benefits

would be paid to him unless he submitted proof that he remained

entitled to receive benefits.[39]  Because undisputed evidence

contained in the Administrative Record establishes that ING stopped

paying plaintiff disability benefits months before CNA assumed the

role of Plan Administrator, and because plaintiff has failed to

present any evidence (either within or outside the Administrative

Record), the summary judgment record provides no support for

_____

[36]See June 4, 2002, letter from plaintiff to Sherry Olson of
ReliaStar, AR at 541-42 (complaining about ING's decision to stop
paying benefits).

[37]See, e.g., September 3, 2002, letter from plaintiff to Rhonda
Johns/Kim Erickson, AR at 533-34.

[38]See CNA's Claims Analysis File for Vicente Menchaca, AR at
212 and 319 (first entry on January 21, 2003, states "received file
- will review").

[39]Letter of November 26, 2002, to plaintiff from James Wilhite,
Baker Hughes' Director of Compensation & Benefits, AR at 457.

plaintiff's assertion that the defendants "reverse[d] the conclusive findings made by prior plan administrators."[40]

> **(2)  Is Plan Administrator Entitled to Terminate Benefits if Plaintiff is Found Not to be Disabled under the Terms of the Plan?**

Plaintiff's argument that CNA's denial of his claim for long-term disability benefits was arbitrary and capricious is grounded on his assumption that an initial determination of disability automatically qualified him for benefits through the maximum benefit period to age 65.  However, the plain terms of the Plan provide for long-term benefits to be paid "while such Participant continues to be subject to the same Total Disability that has entitled him to such benefits."[41]  Moreover, a Miscellaneous Provision of the Plan conditions continued payment of benefits on the beneficiary's ability to provide proof of continued Total Disability:

> Proof of Total Disability. As a condition to the payment of any benefits under the Plan, each Participant shall be required to provide proof of continued Total Disability, including, but not limited to, an examination by a Physician selected by the Plan Administrator, as may be required from time to time by the Plan Administrator. The cost of any such proof of continued Total Disability shall be borne by the Participant or the Plan, as

---

[40]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 36, p. 2 ¶ 5.

[41]Baker Hughes Incorporated Long Term Disability Plan, § 4.3(b), AR at 91.

determined by and in the sole discretion of the Plan Administrator.[42]

Thus, even though ING may have determined that plaintiff was initially eligible to receive long-term disability benefits, payment of benefits from CNA was conditioned upon plaintiff's ability to provide proof of continued Total Disability upon the Plan Administrator's request.  Accordingly, CNA's decision not to pay plaintiff long-term disability benefits could not have been arbitrary and capricious merely because it was contrary to a decision of the previous Plan Administrator.

(b)   Evidence of Plaintiff's Ability to Work

Defendants argue that CNA's decision not to pay the plaintiff long-term disability payments did not constitute an abuse of discretion because it was supported by substantial evidence that he was not totally disabled under the Plan's "any occupation" provision.  Plaintiff counters that there is "no evidence that [he] could have been employed full-time in 'any occupation.'"[43]

(1)   "Any Occupation" Provision of the Plan

The Plan provides for payment of long-term disability benefits for a period of twelve months to a participant who is totally disabled from his "own occupation," but that for benefits to be

---

[42]Id. at § 11.2, AR at 105.

[43]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 36, p. 3 ¶¶ 6-9.

-23-

paid beyond twelve months, the participant must be totally disabled from "any occupation:"

(39) Total Disability

    (a) For purposes of Long Term Disability Coverage, a Disability (i) which prevents a Long Term Disability Participant from engaging in any occupation or employment for which he is qualified, or may reasonably become qualified, based on his training, education, or experience, (ii) for which the Long Term Disability Participant is under the regular care and personal attendance of a Physician for treatment aimed at maximizing such Participant's recovery and return to work, and (iii) during which the Long Term Disability Participant does not engage in any occupation or perform any work for compensation or profit other than Rehabilitative Employment; provided, however, that during the first 12 months of a Disability, Total Disability means a Disability which prevents a Long Term Disability Participant from engaging in his regular occupation and which meets the foregoing requirements under clauses (ii) and (iii). . .[44]

**(2)   Review of the Evidence Under the Plan Terms**

Plaintiff objects to the defendants' evidence and argues that there is no evidence that he could have been employed full-time in any occupation.

(i)   <u>Defendants' Evidence</u>

Plaintiff argues that the Administrative Record

fails to establish the expert qualifications of any persons who purport to render an opinion on Plaintiff's ability to perform work as an "information receptionist,

---

[44]Baker Hughes Incorporated Long Term Disability Plan, § 1.39(a), AR at 84.

> surveillance camera monitor, control access guard and
> gate guard" — or any other occupation. . . . Accordingly,
> Plaintiff **objects** to Defendants' summary judgment
> evidence insofar as it purports to provide expert
> conclusions without proper foundation and/or
> qualification.[45]

Since the only evidence offered regarding plaintiff's ability to
work in the above-listed positions is contained in the report of
CNA's vocational case manager, Julie Byrd, plaintiff's objection
appears to challenge CNA's reliance on that report on grounds that
defendants have neither designated Byrd as an expert nor provided
reason that the court should accept her opinions as an expert's
opinion.   Defendants argue that "[p]laintiff has conceded the
authenticity and admissibility of the claim file by virtue of his
citation to and reliance on these documents as evidence in support
of his Response to Defendants' Motion for Summary Judgment."[46]

Resolution of the pending motion for summary judgment requires
the court to review the administrative record. See Meditrust, 168
F.3d at 213 ("Assuming that both parties were given an opportunity
to present facts to the administrator, [this court's] review of
factual determinations is confined to the record available to the
administrator."). In Vega, 188 F.3d at 300, the Fifth Circuit held
that "the administrative record consists of relevant information
made available to the administrator prior to the complainant's
filing of a lawsuit and in a manner that gives the administrator a

---

[45]Plaintiff's Response to Defendants' Motion for Summary
Judgment, Docket Entry No. 36, p. 3 ¶ 6.

[46]Defendants' Reply to Plaintiff's Response to Defendants'
Motion for Summary Judgment, Docket Entry No. 39, p. 5 ¶ 11.

fair opportunity to consider it." Plaintiff does not dispute that the administrative record under review shows that CNA relied on Byrd's opinion, does not argue that he was precluded from submitting to the Plan Administrator alternative evidence of his ability to work, and has not cited any authority that would allow the court to add to or subtract from that record. See id. at 299 ("Once the administrative record has been determined, the district court may not stray from it except for certain limited exceptions. To date, those exceptions have been related to either interpreting the plan or explaining medical terms and procedures relating to the claim."). Accordingly, the court concludes that plaintiff's objection to CNA's reliance on Byrd's opinion because Byrd has not been qualified as an expert should be overruled. See Hufford v. Harris Corp., 322 F.Supp.2d 1345, 1358-1359 (M.D. Fla. 2004) (rejecting argument that reports of peer review physicians should not have been considered in denial of benefits case on grounds that the reports did not qualify as expert opinions).

(ii) Evidence of Plaintiff's Ability to Work in "Any Occupation"

Asserting that the "'any occupation' language carries an implicit understanding that such occupation should be able to be performed on a full-time basis,"[47] plaintiff argues that the defendants' motion for summary judgment should be denied because it

---

[47]See Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 36, pp. 3-4 ¶ 7.

was not based on substantial evidence but was instead arbitrary and capricious since "[n]owhere within Defendants' summary judgment evidence is there **_any_** statement by **_anybody_** that Plaintiff was able to perform one of the alleged occupations **_on a full-time basis_**. *See* AR 1-550."[48]

Defendants argue that CNA's decision to deny plaintiff's claim to ongoing disability benefits was not arbitrary and capricious because undisputed evidence in the administrative record establishes that plaintiff's condition does not restrict his ability to perform functions required for light and/or sedentary occupations. Plaintiff told CNA during his initial interview that he has a high-school education;[49] and in the appeal that he filed following CNA's initial denial of his claim, plaintiff acknowledged that his treating physicians have found him to be capable of performing light-duty work.[50] Nevertheless, plaintiff argues to this court that the Administrative Record lacks any evidence that he is capable of performing "any occupation" on a full-time basis. In Duhon, 15 F.3d at 1302, the Fifth Circuit rejected the argument that plaintiff advances here under substantially similar circumstances.

---

[48]Id.

[49]AR at 511.

[50]AR at 220.

In Duhon the Fifth Circuit held that a plan administrator did not abuse its discretion by determining that a high-school educated man with moderate restrictions on his physical activity could perform "any job for which he is, or may become, qualified by education, training, or experience" even in the absence of vocational evidence.  Id. at 1309.   The Fifth Circuit

> [found] that it was not an abuse of discretion for the plan administrator to conclude that Duhon was capable of performing some type of occupation without obtaining the opinion of a vocational rehabilitation expert.   Duhon was a sixty-five year old man in overall good health with a high school diploma and moderate restrictions on his physical activity.  The plan only required a finding that Duhon could perform "any job for which he is, or may become, qualified by education, training, or experience." Given this undemanding language and the medical evidence in this case, the plan administrator could competently determine disability without vocational testimony. Texaco's disability benefits plan is not a form of employment insurance; it was not necessary under this plan that the administrator "insure the availability of an alternative job" for Duhon before terminating his benefits.

Id.

As in Duhon, the undisputed evidence in this action is that when CNA denied his claim, plaintiff was a 58-year-old man with a high-school education who acknowledged that according to his own treating physicians he was capable of performing light-capacity to sedentary work.  Also as in Duhon, the Plan language at issue in this case only requires that plaintiff be able to perform "any occupation" for which he is, or may reasonably become, qualified. Considering the Administrative Record in this case, which undisputedly shows that plaintiff admitted to CNA that he was a 58-

-28-

year-old man with a high-school education whose treating physicians found him qualified to perform light-capacity and/or sedentary work, the court concludes that CNA did not abuse its discretion by finding that plaintiff was not disabled from performing "any occupation."

> (c)   Delay in Processing Claim

> Plaintiff alleges that he

>> brings this lawsuit to recover unpaid benefits under the policy, to enforce his rights under the policy, to be compensated for all consequential injuries suffered by him, and to obtain all other relief to which he is entitled under law.

>> . . .

>> . . . [E]ach Defendant violated federal statutes covering the facts of this case by refusing to continue insurance and/or Long Term Disability payments when such payments were, in fact, properly due to Plaintiff.  Such federal statutes include, but are not limited to, provisions for a reasonable review of policy benefits and prompt payment of claims under such policies, as mandated by [ERISA].[51]

Any ERISA claim that plaintiff is attempting to assert to recover compensatory and/or consequential damages arising from delay in the processing of his claim is precluded by the Supreme Court's decision in <u>Massachusetts Mutual Life Insurance Co. v. Russell</u>, 105 S.Ct. 3085, 3088 (1985).  In that case the Supreme Court held that § 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(1)(B), did not authorize the plaintiff's individual suit for compensatory and punitive

---

[51]Plaintiff's Second Amended Complaint, Docket Entry No. 26, pp. 3-4 ¶¶ 10-11.

damages against an administrator who had wrongfully delayed payment of her benefit claim.  See also Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc., 793 F.2d 1456, 1463 (5th Cir. 1986) (recognizing that in Russell the Supreme Court held that an individual beneficiary cannot recover extra contractual damages, either compensatory or punitive, under ERISA for improper processing of benefit claims).

    3.   Conclusions

    The court concludes that defendants are entitled to summary judgment on plaintiff's ERISA claim because CNA's decision to deny plaintiff's claim for disability benefits is subject to review for abuse of discretion, CNA did not abuse its discretion by denying plaintiff's claim, and consequential and/or exemplary damages arising from CNA's alleged bad faith or delay in processing plaintiff's claim are not available under ERISA.

**B.   Plaintiff's State Law Claims**

    In addition to his claim for long-term disability benefits under ERISA, Plaintiff's Original Complaint (Docket Entry No. 1) alleged various state law causes of action and sought the imposition of exemplary damages.  At the scheduling conference held on November 16, 2007, the court granted defendant's Rule 12(b)(6) motion to dismiss all causes of action except for plaintiff's claim for benefits under ERISA, and ordered plaintiff to amend his

complaint (Docket Entry No. 18).  Plaintiff's First Amended Complaint (Docket Entry No. 20) continued to allege claims based on state law such as claims for medical expenses, mental anguish, and consequential and exemplary damages.  By Order entered May 29, 2008 (Docket Entry No. 25), the court granted defendant's second Rule 12(b)(6) motion to dismiss all causes of action except plaintiff's claim for benefits under ERISA, and again ordered plaintiff to amend his complaint.  Despite these prior rulings, Plaintiff's Second Amended Complaint (Docket Entry No. 26) contains allegations that may represent an attempt to assert claims based on state law, e.g., "Defendants' decision to terminate benefits was completely unreasonable under the circumstances, and in bad faith."[52]

In <u>Aetna Health Inc. v. Davila</u>, 124 S.Ct. 2488, 2495 (2004), the Supreme Court reaffirmed that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." <u>Davila</u> involved a Texas statute that created a cause of action for any person injured by a plan administrator's failure to exercise ordinary care in the handling of coverage decisions.  Recognizing that ERISA was intended to be a "comprehensive legislative scheme" with an "integrated system of procedures for enforcement," the

---

[52]Plaintiff's Second Amended Complaint, Docket Entry No. 26, p. 3 ¶ 10.

Court explained that since ERISA § 502(a)(1)(B) already provided a cause of action for a plan participant to recover wrongfully denied benefits, the alleged injuries covered by the Texas statute were duplicative and, thus, preempted.  Id.  Accordingly, the court concludes that any state law claims that plaintiff may be attempting to assert for bad faith or delay in processing his claim, and/or for consequential or exemplary damages are preempted by ERISA because they are claims that duplicate, supplement, or attempt to supplant ERISA's civil enforcement remedy.

## IV.  Defendants' Claim for Attorney's Fees

ERISA § 502, 29 U.S.C. § 1132(g)(1), provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  See Salley v. E.I. DuPont de Nemours & Co., 966 F.2d 1011, 1016 (5th Cir. 1992) (recognizing that under ERISA the district court has the discretion to award attorney's fees to either party).  In this circuit claims for attorney's fees in ERISA cases are evaluated according to:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

Id. (quoting Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980)).   No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying ERISA § 502(g).   Although defendants have included a request for attorney's fees in their briefing, they have not included an analysis of factors that courts use to decide whether such fees should be awarded.   Accordingly, defendants' request for attorney's fees will be denied.

### V.   Conclusions and Order

For the reasons explained above, Defendants' Motion for Summary Judgment (Docket Entry No. 28) is **GRANTED**, but Defendants' request for attorney's fees is **DENIED**.

**SIGNED** at Houston, Texas, on this 15th day of August, 2008.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-33-